Good morning, Your Honors. My name is Zachary Allender. I'm here with my co-counsel, Chad Russell. We will be representing Petitioner Jose Roberto Magana Cuellar in this matter. And depending on the questioning, we may be both available to respond to the court. Here Your Honors, the board and the IJ erred because there's compelling evidence that Jose's membership in a particular social group, as well as his religious beliefs, were central, a central reason in why he was persecuted by the MS-13 gang in El Salvador. Now, does it matter with respect to his religious belief that he testifies credibly that it's his Seventh-day Adventist belief that is responsible for his behaving as the way he does and refusing to cooperate with the gangs and so on, but that the gangs respond to people who don't cooperate equally, whether or not it's a religious motivation for the person resisting or not? And there's, I think, no evidence that the gang members here know that he's a Seventh-day Adventist. Does it matter that the gang members don't have a religious motivation? Your Honor, I believe it could matter. It could matter what is in the gang members' mind, their perception. Here I believe that actually there is evidence that the gang members were aware of his fundamental beliefs and that that was part of their motivation. Help me with that evidence. What's the evidence of that, then? Of course, Your Honor. So the record really is replete with references to Jose's religious convictions. He was raised from birth as a Seventh-day Adventist. He's living in a very small town called Las Chinimas in El Salvador. Starting at age 14, Jose is mugged and threatened on his way between his work and his home. The church is in the middle on the way there. Now, is it his church or just a church? It's unclear. It says the church in the record. So, you know, that is... If we're talking Central America, my guess is it's a Catholic church rather than a Seventh-day Adventist church. But I don't know. All I know from what I saw on the record is it says the church. That is what I know as well, Your Honor. In any event, it's an extremely small town. And he testified credibly that these gang members know him. They know him, not just people around town. They know him. They know every person in the town and where they live. So he is already identifiable. And what happens is every day he goes between his home and his work, he gets mugged, essentially, shook down for all the money he has. After that very severe beating the first time around. Yes, indeed. At age 16 is when the mugging sort of escalates into, you know, what we call the very dramatic beating where he almost lost his life. Oh, I got it reversed. Okay. Yeah. A couple of years into it, the gang members stop him again like normal, threaten to kill him. This time they come close to falling through on their threat. It's out right in front of the church. They beat him mercilessly. He starts saying no, no, but thinks that they are going to kill him. And if he says anything, that they will follow through on the threat to kill him. They come very close. They drag him around the back of the church and leave him for dead there. Luckily, his uncle finds him coming back toward the house and picks him up after. And he's unconscious the entire time. He wakes up, next thing he knows, in his house and, you know, is then laid up in bed. They can't afford a doctor, so his father administers first aid. They basically, it takes a week for his wounds to heal enough so that the swelling goes down and that he can go outside. From then on, again, every day thereafter, he goes out. He is confronted by these same gang members. They see him. They know him. They shake him down because they know he is nonviolent. He will not resist. He is an easy target. And the evidence that they know that he's nonviolent based on religious beliefs is based on inference because it's a small town. Because they didn't see anything in the record that shows any affirmative communication on his part, anybody else's part, to the gang that he's a member of the church. And not only that, but he holds nonviolent beliefs because of his religious beliefs. Thank you, Your Honor. I believe there is some evidence of that, although there also, a lot of it is circumstantial. I think the main evidence is one time he was accosted again. This is after the beating, after he is recovered and is going about his business, trying to avoid them. And he says, the time I did answer back, I told them no, I didn't want to do it, meaning become a member of their gang, because I didn't like violence. So he told them at least once in the record that directly. He was accosted, as I said before, in front of the church. It's at least circumstantial evidence that they were aware of his membership in the church. They were aware, certainly, of his nonviolence. So if we accept all these inferences, as Judge Nguyen says, and conclude that the gang members knew of his religious affiliations or his religious beliefs then. But you still have to show, don't you, that the persecution was a kind of his membership in that group, meaning on account, has something to do with his religion. And what's the evidence of that, that they were, you know, the gang members were motivated by his religion? Well, Your Honor, I think it's, the evidence is all of the same evidence, essentially. It wouldn't make any difference. They do that to anybody, and they do do it to anybody. In this case, Your Honor, actually, I believe he is somewhat special in that he was targeted by them. He did not resist when they beat him up. No, targeted, because why? Because of his religion? Well, because of his fundamental beliefs in nonviolence, Your Honor. You mean they knew about his nonviolence, and that's why they targeted him? I believe that was a central reason. He became an easy target at that point. Every time he stepped out of the house, he would be easy for them to go after, get money every single time. And, you know, for that reason, they beat him nearly to death. As I believe the... So they were interested, motivated to beat him just because he was an easy victim. Is that what you're telling me? Well, I think they had, obviously, a number of motives. You know, his motive there is his fundamental beliefs. Now, you know, he told them about those at least once in the record. We can infer more based on the circumstantial evidence about how everything happened. And, you know, I... And the fact that they knew, as he said, they knew who I am. They know where every person in the village lives. They know who they all are. It's not about, you know, I know Jose. They know him and, you know, his family, where they go. But when you say he told them that, he told them that in response to what? A demand they made, right? Yes. They were trying to recruit him. They were targeting him again. They were shaking him down. They were trying to recruit him? Correct. But trying to recruit him has nothing to do with his religion, does it? Well, no. Trying to recruit him does not. He was targeted and beaten and robbed and mugged and... Because he wouldn't join the gang? An essential reason for that is that he held sincere, credible, nonviolent religious beliefs that compelled him not to join a gang. As the immigration judge actually stated, no one who belongs to a church that advocates nonviolence and holds fundamental religious beliefs should be required to join a gang, as joining necessarily requires one to commit acts that run afoul of one's identity and conscience. And, you know, from the beginning, from 14 years old, Jose was put to that test over and over and over again. And he rose to that challenge up until the point where his grandfather, you know, shoved enough money in his pocket to be able to make it to the United States. We also, Your Honor, I see that our time is already running down. There is a ground here of just direct persecution based on his religion that I don't believe was addressed by the BIA sufficiently. They claimed, in their opinion, that he did not qualify on any ground. So I think it's possible to say that it's been exhausted. But I did want to give my co-counsel some time to discuss that portion. Before I do that, with regard to the social group claim, I believe, Your Honor, that the Enriquez-Rivas case really is on point here. And the reason why I say that is because you have, you know, someone who is testifying against a gang member. I don't think there is a really a sufficient difference between that and Jose here, who saw these people. He knows them. They know him. There's no doubt that, you know, the visibility of the gang member vis-a-vis Jose is established. And that he's in grave danger there as a result. So I think... I didn't know you were sharing time, so... I apologize. If you're sharing time, you better start sharing because you're running down. Well, if you have any questions about that, Your Honor, I'll be happy to answer those. Okay. I'm okay for now. Thank you. Thank you, Your Honors. As Mr. Allender said... I'm Chad Russell, by the way. As Mr. Allender said, we have... Jose has raised on appeal his claim of persecution based on his religion alone without respect to the social group. And so the issue I just wanted to address was whether that's been exhausted with the agency. We believe that it has. The case of Suckup Gonzalez and also Vizcarra Ayala and also Figueroa are squarely on point here. The question is not whether... And we freely admit, by the way, that we didn't directly raise this claim. We say that in our briefs, that it wasn't presented in the most clear way possible. But that's not the question right now. The question before the Court is, did the agency have the opportunity to consider it, consider it, and consider it on the merits and make a determination, that issue? And the answer is yes, under the cases I just cited. For example, in Suckup Gonzalez, the Petitioner appealed based on equitable tolling. But he appealed based on equitable tolling, but below in the agency, he had brought equitable estoppel claim. And so he did not raise equitable tolling with the agency below. But with the agency, he presented facts related to equitable tolling. He told a story of equitable tolling. He told how he got bad advice from a lawyer, and that made him withdraw his... Let me see where you're trying to go with this. Is this trying to justify a remand based upon Enrique Srivas? I mean, what's the purpose of this argument? The motivation behind the argument is we think that Jose was persecuted because of his religious beliefs. And once you get there, then you don't need to worry about particularity and social visibility and the other member of a group elements, because that's the point, is this issue has been addressed below because it's a necessary part of our membership in a group claim. And so if you do find that he was persecuted on account of if one of the central reasons was his religion, then that should be the end of it, and we shouldn't need to worry about the rest of the social developments. Thank you. And then you save some time. Thank you, Your Honors. Good morning again. Michael Heiss on behalf of the Respondent and the Attorney General of the United States. Petitioner's particular social group membership really isn't the issue in this case. It's the lack of any link between the group he claims to be a member of and any harm that he suffered in the past or that he fears now. Substantial evidence requires more than inferences. The Court asked in several different ways what evidence is there in the record that demonstrates that the gang was at all aware or motivated by his religion when it harmed him. I heard three pieces of evidence, that he was near a church. We don't know if it was his church, that the gang knows everyone in town, and so therefore we can infer that they knew he was somehow an easy target, and also his statement that, quote, I don't like violence. I think also the suggested inference was not only that he doesn't like violence, but that maybe they also know he's a Seventh-day Adventist. They may, in fact, know that. And I did mention that, that they, you know, the gang knows everyone in town, so they would, of course, know that he's a devout religious individual. And there's no question that what he experienced was unfortunate. Obviously, I mean, the immigration judge in this case concluded that the harm he experienced rose to the level of persecution, but not persecution on account of a protected ground. He may hold these subjective beliefs. He absolutely does. I don't think there's any question that he believes, you know, he's adamantly anti-violence, doesn't want to join a gang because he doesn't agree with them. The problem is he never told them that, nor did they ever say to him, we're coming after you because we, you know, want you to basically disavow your religion or anything like that. Just based on the record, in the first incident, the gang basically said join us or else, and he said no. He didn't say no because I'm Christian, because I'm Seventh-day Adventist, because I don't believe in what you do. On the second event, and that's an important point, the second incident was the one where he said I don't like violence. That's pretty much as close as we're going to get to him communicating something to the gang about what he thinks. Notably, he didn't say I don't believe in violence. There's a canyon of difference, I think, between not liking violence. If we were dealing with English speakers and English testimony and lawyers and so on, I might attach more importance to the argument than you're trying to give us, but translations and so on, yeah. But ultimately, we're dealing with inferences. We're dealing with a record that doesn't demonstrate any link between his beliefs, which we're not disputing that he believes these things, but there's no link that the gang had any awareness of that or that they acted upon those, even if they were aware of those things. As this court in Ticoon Florian noted, in that case, the individual was observed, the gang observed the individual entering a church and then waited for him to leave before beating him up. We don't even have that here. We fall short of that. What we're required to do is try to extrapolate from his beliefs as to why he did what he did to explain why the gang did what it did, and there's simply nothing there. As I said initially, substantial evidence requires more than inferences, and if the court possibly could accept these inferences as adequate, that still falls short under substantial evidence because you have reasonable minds disagreeing. Substantial evidence requires compelling evidence that no fact finder could reasonably disagree with it, and we simply don't have that here. With respect to whether or not he was persecuted on account of his religion, separate from membership in a social group that was religion-based, again, that argument was not specifically raised before the agency. In fact, counsel before the immigration judge said, quote, Jose Cuellar was not persecuted based on his religion. I'm not sure how much clearer it needs to be to disavow an argument and then to subsequently not pursue it before the agency. Nonetheless, obviously religion is a factor in the particular social group issue, but, again, we still have to demonstrate a nexus between the harm and the reason for it, and we don't have that here. Even if he was – well, he's claiming persecution on account of religion. We simply don't have any evidence that he was targeted on account of his religion if the Court decides it has jurisdiction to retain that argument. This Court has no further questions. Thank you. You've saved a little time if you'd like to use it. Thank you, Your Honors. Just in brief response to the points raised by the government, the first is that there's no inference here that he raised this with the gang. That, I submit, is just not true. He told them directly that he did not like violence. He was accosted by them nearly every day over the course of three years. They saw him go everywhere throughout the town. And this all has to be, I think, accepted as credible testimony from him. They knew every person in every house. He says, they know who I am. Not just, you know, Jose on the corner. They see him every day.  The last point is the fact of waiver that I believe was raised at the end here. He is correct that the attorney at the immigration hearing said that we were not directly pursuing religious persecution. And that was because they went on and said, because it is raised within the context of our membership in social group claim, our social group was comprised of youths that were targeted and recruited by these gangs as a result of their membership in a nonviolent church and their fundamental beliefs as a result. So you can't sort of, you know, untie those two things. It was literally raised as part of the social group. So it had to be a ground for their opinion before. Thank you. Okay. Thank you very much. Quaylor versus Holder now submitted for decision.
judges: Tashima, Fletcher, Nguyen